Filed 4/28/21

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| In re the Marriage of ELIZABETH ANNE WENDT and WILLIAM NICHOLAS PULLEN. | C084083 |
| ELIZABETH ANNE WENDT, | (Super. Ct. No. TFL135547) |
| Respondent, | |
| v. | |
| WILLIAM NICHOLAS PULLEN, | |
| Appellant; | |
| WINDHAM BREMER, as Trustee, etc., | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of Nevada County, Robert Lynn Tamietti, Judge. Reversed.

Law Office of Leslie J. Shaw and Leslie J. Shaw for Appellant.

Gutierrez Marca and William F. Gutierrez for Respondent Windham Bremer, as Trustee, etc.

No appearance for Respondent Elizabeth Anne Wendt.

1

Under the law governing dissolution proceedings, a wealthier party to the proceeding may be compelled to pay another party's attorney fees. (See Fam. Code, § 2030.)[1] Here, appellant William Nicholas Pullen appeals from the family court's denial of his section 2030 motion to compel respondent Windham Bremer, the trustee of the Elizabeth Anne Wendt Trust, to pay his attorney fees stemming from his successful motion to join the trustee as a third party to the dissolution action involving Pullen and his ex-wife Elizabeth Anne Wendt.

Pullen contends the family court's ruling was an abuse of discretion as it was based on legal error, and that it effectively precludes him from further litigating the matter.

Bremer counters that under California law a trustee cannot be compelled to disburse money absent a showing of bad faith. He argues that Pullen's claim is subject to Probate Code restrictions on claims against spendthrift trusts. He also claims that payment was barred under Indiana and Illinois law, and that appellant's underlying claim is specious.

Since the question before us involves the administration of the trust rather than interpreting its terms, Indiana law may apply, and Illinois law is inapplicable. However, choice of law is immaterial as both Indiana and California follow the modern interpretation regarding the liability of trusts and trustees to third parties. This modern approach allows third parties to obtain relief from the trust for matters arising out of the trust's administration, and is not limited by spendthrift provisions. Section 2030 provides for the award of attorney fees against parties other than spouses, like the trustee. Since the award of attorney fees stems from the administration of the trust and does not involve a claim against the beneficiary, payment from a spendthrift trust is not contingent on the

---

[1]    Undesignated statutory references are to the Family Code.

bad faith of the trustee. It was an abuse of discretion for the family court to make the award of fees contingent on such a showing and we shall reverse and remand for additional proceedings.

BACKGROUND

On December 29, 1989, William Wendt (grantor) created the Elizabeth Anne Wendt Trust as an irrevocable spendthrift trust, with respondent Bremer as the trustee and his daughter Elizabeth Anne Wendt (Wendt) as the current beneficiary. Both the grantor and the trustee lived in LaPorte, Indiana at the time the trust was created and at all times since. Respondent has administered the trust exclusively in Indiana. The trust, which was drawn up by attorneys in Chicago, has choice of law provisions designating Illinois as the choice of law for interpreting the trust document, and all other questions "shall be governed by the law of the state in which the principal place of administration of that trust is located at the time of reference." In 1995, Wendt agreed to relinquish her rights to compel distributions to her in exchange for her father paying her money and putting more money in the trust. The trust has extensive assets that include stock and funds from the family business and real property in California.

Wendt and appellant married on September 13, 1997. Wendt filed a petition for dissolution of the marriage on August 8, 2013. The issues to be decided include child custody, division of property, child and spousal support, and attorney fees. Appellant and Wendt had three minor children when the petition was filed.

On January 21, 2015, Wendt made a written request of respondent to disburse trust funds to meet her support needs, which respondent denied on January 27, 2015.

On February 8, 2016, appellant filed a motion to join the trust and trustee to the dissolution action and to compel the trustee to disburse funds to Wendt as necessary to ensure payment of spousal or child support orders and for attorney fees. The family court granted the motion to join on February 16, 2016. It also ordered appellant to pay $73 a month in child support to Wendt. Finding the parties' net incomes were substantially

3

similar and that Wendt did not have access to the spendthrift trust's assets, it declined to order any spousal support to appellant, and denied appellant's request for attorney fees from Wendt.

On May 24, 2016, respondent filed a motion to quash for lack of jurisdiction and/or dismiss for forum non conveniens, which the family court denied on July 15, 2016. We denied respondent's petition for a writ of mandate on August 25, 2016. Respondent filed a demurrer to the joinder on September 6, 2016, which the family court overruled on August 28, 2017.

On September 16, 2016, appellant filed a section 2030 request for $76,141 in attorney fees and costs from the trustee for expenses incurred in bringing the successful motion to join the trust and trustee. The family court denied the request, finding it was precluded from making an award absent a finding of bad faith by the trustee. Appellant filed a petition for writ of mandate, prohibition, or other appropriate relief, which we denied on January 12, 2017.

DISCUSSION

I

We begin by examining the basis of appellant's claim, section 2030 and the law regarding spendthrift trusts upon which the family court's decision rests.

A. *Section 2030*

A party's ability to recover attorney fees and other expenses and costs in a dissolution proceeding is governed by section 2030,[2] which provides in pertinent part:

"In a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation, including access

---

[2] Section 271 also provides for attorney fees as a sanction against one party. No such sanction was ordered in this case.

4

early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).)

Parties to the dissolution proceeding other than spouses can be required to pay under this statute. "Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party." (§ 2030, subd. (d).) A spouse does not have to demonstrate the likelihood of success or establish a prima facie case linking the third party to the dissolution proceeding. (*In re Marriage of Bendetti* (2013) 214 Cal.App.4th 863, 865.) The spouse is entitled to relief so long as the matter underlying the fees was not specious. (*In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 53.)

California has a strong public policy of ensuring a level playing field between the parties to a dissolution proceeding. " 'California's public policy in favor of expeditious and final resolution of marital dissolution actions is best accomplished by providing at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses in their ability to obtain effective legal representation.' " (*Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 41, fn. 12.) Accordingly, "[t]he purpose of section 2030 is to ensure that the overall cost of litigating a proceeding for the dissolution of marriage, nullity of marriage, or legal separation (§ 2030, subd. (a)) is apportioned equitably depending on what is 'just and reasonable under the relative circumstances of the respective parties.' [Citations.]" (*In re Marriage of Perry* (1998) 61 Cal.App.4th 295, 310-311.)

Since a party does not have to prevail or even establish a prima facie claim to get attorney fees from a third party brought into the litigation, conditioning section 2030

relief on the third party's bad faith, as the family court did here, is inconsistent with that statute. The family court's reasons for this approach is found in the other body of law relevant to this case, the law of trusts.

B. *Trusts*

" 'A spendthrift trust is created where the settlor gives property in trust for another, and provides that the beneficiary cannot assign or otherwise alienate his or her interest, and that it shall not be subject to the claims of the beneficiary's creditors.' [Citations.]" (*Chatard v. Oveross* (2009) 179 Ca.App.4th 1098, 1104.) "Creditors of the beneficiary generally cannot reach trust assets while those assets are in the hands of the trustee, even if they have secured a judgment against the beneficiary. Rather, creditors must wait until the trustee makes distributions to the beneficiary. The law permits such trusts because donors have 'the right to choose the object of [their] bounty' and to protect their gifts from the donees' creditors. [Citation.] Providing donors some measure of control over their gifts encourages donors to make those gifts, to the benefit of the donor, the beneficiary, and ultimately the beneficiary's creditors." (*Carmack v. Reynolds* (2017) 2 Cal.5th 844, 849.)

California generally follows the common law of trusts, except as modified by statute. (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1074.) The law regarding spendthrift trusts is stated as follows:

"Under the Probate Code, spendthrift provisions are generally valid as to both trust income and trust principal. [Citations.] Yet creditors need not always wait for distributions to reach the debtor's hands. Spendthrift provisions are invalid when grantors name themselves beneficiaries. [Citation.] When a trust includes a valid spendthrift provision, certain creditors may reach into the trust. Such creditors include those with claims for spousal or child support [citation] and those with restitution judgments [citation]. In addition, a state or local public entity can reach trust assets when the beneficiary owes money for public support [citation] unless distributions from the

6

trust are required to care for a disabled beneficiary [citation]." (*Carmack v. Reynolds, supra*, 2 Cal.5th at p. 849.)

The family court relied on a spendthrift trust case, *Ventura County Dept. of Child Support Services v. Brown* (2004) 117 Cal.App.4th 144 (*Ventura*), to find section 2030 fees could be awarded only upon a finding of bad faith by the trustee. *Ventura* involved an application of the provision allowing spendthrift trusts to be accessed for child support payments, Probate Code section 15305, subdivision (c).[3] (*Ventura*, at p. 149.) The issue in *Ventura* was "whether a court may order a trustee to exercise its discretion to satisfy a support judgment (from trust income or principal) when the trustee has chosen not to make a payment to the beneficiary." (*Id*. at p. 152.) The Court of Appeal found the trustee could not frustrate Probate Code section 15305 in this way. Recognizing that courts generally do not interfere with a trustee's discretion in the absence of bad faith (see *Ventura,* at p. 154), such restraint did not apply in light of the strong public policy advanced by Probate Code section 15303.

The *Ventura* court noted California has a strong public policy favoring payment of child support (*Ventura, supra*, 117 Cal.App.4th at p. 154) and, "[b]y enacting section 15305, the Legislature intended to allow a support creditor to satisfy court-ordered child support obligations where the parent is a trust beneficiary. The statute was crafted to preclude a beneficiary's efforts to avoid a support obligation. The fact that the statute refers to payments made by the trustee demonstrates legislative intent that the trustee make distributions from the trust. Although a trustee may be given broad discretion, it

---

**3** Probate Code section 15305, subdivision (c) states: "Whether or not the beneficiary has the right under the trust to compel the trustee to pay income or principal or both to or for the benefit of the beneficiary, the court may, to the extent that the court determines it is equitable and reasonable under the circumstances of the particular case, order the trustee to satisfy all or part of the support judgment out of all or part of future payments that the trustee, pursuant to the exercise of the trustee's discretion, determines to make to or for the benefit of the beneficiary."

7

may not exercise its discretion with an improper motive." (*Id*. at p. 155.) Contrary to the family court's ruling here and the arguments of respondent in this case, *Ventura* does not require a finding of trustee bad faith to compel payment of child support from a spendthrift trust. Rather, the act of declining to pay child support owed by the beneficiary was the requisite "improper motive" that justified court ordered disbursement of child support payments. "Under [Probate Code] section 15305, even if the trust instrument contains a spendthrift clause applicable to claims for child support, 'it is against public policy to give effect to the provision.' [Citation.]" (*Id*. at p. 154.)

Although the attorney fees sought here were in support of litigation for potential child support payments from the spendthrift trust, any potential tension between section 2030 and Probate Code section 15305 is irrelevant to the resolution of this case because the dispute is about subject matter not covered by the spendthrift provisions of Probate Code section 15305. *Ventura* is nonetheless instructive as it shows it is possible that the trustee of a spendthrift trust can be compelled to disburse assets in light of countervailing public policies.

II

*No Conflict*

As the trust document contains choice of law provisions designating Illinois law for interpretation and the state where the trust is primarily administered, and Indiana for all other questions, it is necessary to determine which state's law applies here. Since the question here involves administration of the trust rather than its interpretation, Illinois law is inapplicable. Whether California or Indiana law applies regarding the trust's administration is immaterial to our analysis as both Indiana and California follow the modern interpretation regarding the liability of trusts and trustees to third parties.

Spendthrift trusts are valid in both California and Indiana. (See Ind. Code § 30-4-3-2.) As in California, a court applying Indiana law generally will not intervene in the administration of a spendthrift trust absent a showing of bad faith. (*Sisters of Mercy*

8

*Health Corp. v. First Bank of Whiting* (Ind. App. 1993) 624 N.E.2d 520, 522.)  Also, like California, Indiana allows a claim of spousal or child support to overcome a trust's spendthrift provision.  (*Clay v. Hamilton* (1945) 116 Ind.App.214, 224; *Sisters of Mercy Health Corp.,* at p. 522, citing *Clay*.)

California and Indiana law also follow the same approach to the aspect of the law of trusts that determines the question here, the liability of the trust and trustee to third parties with claims arising out of the trust's administration.  California and Indiana both recognize the common law principle that an express trust is not a person or legal entity separate from the trustees, but is instead a fiduciary relationship regarding property. (*Presta v. Tepper* (2009) 179 Cal.App.4th 909, 914; see *Baugher v. Hall* (1958) 238 Ind. 170, 171 ["An estate, a receivership, a trusteeship are not parties to the judgment in the lower court because they are not legal entities.  A trust is represented by the fiduciary, who is the party to the judgment."], disapproved on other grounds in *Jasper & Chicago Motor Express, Inc. v. Ziffrin Truck Lines, Inc*. (1961) 241 Ind. 643.)

This common law rule had potentially harsh consequences, as it left the trustee personally liable for any liability arising out of the trust's administration. "Commentators have long criticized the traditional approach as unfair to trustees . . . . Reacting to these concerns, most American states [] no longer follow the traditional rules. Under the modern approach adopted in this chapter, third parties may proceed against a trustee in the trustee's fiduciary ('representative') capacity whether or not the trustee is also personally liable, with the trustee shielded from personal liability insofar as the trustee acted properly."  (Restat.3d of Trusts, ch. 21, intro. note (Restatement).)  This part of the Restatement has been cited favorably in Witkin (see 11 Witkin Summary of Cal. Law (11th ed. 2017) Trusts, § 2009, p. 612) and by an Indiana appellate court (*Kesling v. Kesling* (Ind. App. 2012) 967 N.E.2d 66, 81).

The Restatement summarizes the modern reaction to the common law rule. "Technically, the trust is still not generally recognized as a legal 'entity,' but it is

generally for federal tax purposes, and in practice trustees act on behalf of their trusts and are sued as trust representatives. Indeed, in this Chapter and elsewhere in this country, the trust is *treated* as an entity to such an extent that it is no longer inappropriate to refer to claims against or liabilities of a 'trust' (as in the title and content of this Chapter) and to the liability or debt of a beneficiary to a 'trust' (as in Chapter 20), or to refer to and treat trusts, in law and in practice, as if they were entities in numerous other contexts." (Restatement, *supra*, ch. 21, intro. note.)

California and Indiana take the modern approach and allow third parties to recover from the trust for liabilities arising from the trust's administration. California provides as follows:

"A claim based on a contract entered into by a trustee in the trustee's representative capacity, on an obligation arising from ownership or control of trust property, or on a tort committed in the course of administration of the trust may be asserted against the trust by proceeding against the trustee in the trustee's representative capacity, whether or not the trustee is personally liable on the claim." (Prob. Code, § 18004.)

Indiana's statute takes a different form, but still allows third parties to recover from the trust in certain circumstances:

"(a) Unless the terms of the contract or other non-negotiable obligation expressly provide otherwise, the trustee is not personally liable on a contract or other non-negotiable obligation with a third person made by him in the administration of the trust.

"(b) When a third person is entitled to compensation for injury suffered in the course of the administration of the trust:

"(1) If the injury is the result of the trustee's personal act or omission as trustee, the trustee will be personally liable and the injured party will be entitled to satisfaction of his claim from the trustee's individual property first and then, to the extent the claim is yet unsatisfied, from the trust estate.

10

"(2) If the injury is the result of the act or omission of an agent of the trustee, and the agent was properly selected and supervised and there was no improper delegation of authority to the agent, the injured party will be entitled to satisfaction of his claim from the trust estate first and then, to the extent that the claim is yet unsatisfied, from the trustee's individual property.

"(3) If the injury is the result of the act or omission of the settlor or his agent, and not that of the trustee or his agent, the injured party will be entitled to satisfaction of his claim from the trust estate and not from the trustee's individual property.

"(4) The question of ultimate liability as between the trust estate and the trustee individually, if it is to be determined, shall be determined in a proceeding for accounting, surcharge or indemnification." (Ind. Code 30-4-3-10.)

There is no decision in either state holding a spendthrift trust is immune from paying debts related to the administration of the trust, and we see no reason for recognizing such an exemption. The purpose of a spendthrift trust is to prevent dissipation of the trust's assets by the beneficiary or the beneficiary's creditors. "It is the essence of a spendthrift trust that it is not subject to voluntary alienation by the *cestui*, nor subject to involuntary alienation through attachment or other process at the suit of his creditors. [Citations.]" (*Kelly v. Kelly* (1938) 11 Cal.2d 356, 362; see *Brosamer v. Mark* (Ind. App. 1989) 540 N.E.2d 652, 654-655 ["a spendthrift trust is one in which the beneficiary is unable to transfer, assign, or alienate his right to future payments of income or principal, and which provides the beneficiary's creditors are unable to subject the beneficiary's creditors are unable to subject the beneficiary's interest to the payment of their claims while in the hands of the trustee"].) It does no damage to the purpose of a spendthrift trust to allow creditors to reach the trust's assets for payment of debts arising out of the trust's administration.

Notwithstanding respondent's claims to the contrary, the request for fees and costs under section 2030 by appellant Pullen is not contingent on claims against the trust by the

11

trust's beneficiary, Wendt. Rather, it is a claim against the trust for a debt arising due to the trust's administration, the litigation regarding appellant's successful efforts to bring the trustee and trust into the dissolution proceeding. It is therefore exempt from the trust's spendthrift provision, and the family court erred in finding it could not award fees absent a showing of bad faith by the trustee.[4]

The family court's erroneous failure to determine whether appellant is entitled to relief under section 2030 is an abuse of discretion. (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 592 [legal error is abuse of discretion].) Since an award of fees and costs under section 2030 involves factual issues not yet addressed, we shall reverse the family court's order and remand for additional proceedings.

DISPOSITION

The order denying appellant's section 2030 motion is reversed and the matter remanded for additional proceedings consistent with this opinion. Appellant is entitled to recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

 

 

/s/
_____
BLEASE, Acting P. J.

We concur:


/s/
_____
HULL, J.


/s/
_____
RENNER, J.

_____

**4**    We also reject respondent's contention that section 2030 fees are improper here because the underlying claim is specious. Respondent incorrectly assumes the claim's merit is measured by the possibility of his obtaining child support from the trust. Not so. Appellant seeks compensation for the costs and fees associated with successful efforts to join the trustee and trust. Appellant's success belies any claim of its speciousness.

12